## THE LIZZIE CRAWFORD.

### THE WHITE SEAL.

(District Court, E. D. Pennsylvania. October 15, 1907.)

### No. 44 of 1904.

SALVAGE—RESCUE OF STRANDED LAUNCH—AMOUNT OF COMPENSATION.

A naphtha launch, 60 feet long and worth $6,500, became stranded on a jetty in the Delaware river; the rocks piercing holes in her bottom under the engine, where they could not be reached. All of her apparel and the other property aboard was taken off, and she was left alone with her anchors out. On the next day she was found by the tug Crawford, apparently abandoned and in danger of further injury, and the tug undertook her rescue. She was hauled off the rocks to the mud flats near by, and an effort made to pump her out and repair her, so she could be towed without sinking. This was found impossible, and another tug was procured, and she was towed to port between the two. After commencing the work the tug was warned by persons in a boat not to touch the launch, but had no reason to suppose from their language that such persons had any interest in her. The tug devoted eight days to the work. *Held*, that it was a salvage service, and under the evidence was performed with reasonable skill and care, and that the tug was not liable for injuries resulting to the launch, but that, in view of the fact that there was no danger connected with the work, an award of $750 therefor was sufficient, with a further allowance of $100 for the helping tug.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Salvage, §§ 17, 72–74.

Awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit for salvage. On final hearing.

Edward F. Pugh, for libelant.
Joseph Hill Brinton, for respondent.

HOLLAND, District Judge. The White Seal is a naphtha launch, with a 40 horse power engine, 60 feet in length, 12 feet beam, which cost the owners $8,000 to build in 1903. Her value was about $6,-500 at the time she was stranded upon the rocks from which she was rescued by the tug Lizzie Crawford. On Sunday, June 16, 1904, at about 3 o'clock p. m., this launch, in proceeding up the Delaware river, went aground on a jetty extending from the lower end of Reedy Island, known as "Lower Reedy Island Jetty." She was at the time under the control of one of the owners, James McMasters. William H. Lear was the engineer in charge. At the time the tide was low, and the vessel rested nearly on even keel, being slightly listed to starboard. An examination showed that the rocks had pierced the timbers under her engine and fly wheel, so that they could not get at the leak to stop it. Two anchors were thrown out to prevent her from working, and a light placed upon her. Every movable article was taken off, and the vessel was entirely stripped of everything that could be removed, and no one remained on board. About noon the next day, June 27th, the master of the tug Lizzie Crawford, bound down the river, heard of the condition of the yacht and went to her assistance. When he arrived he found the yacht with no one on board, and stripped of all her apparel and movable property, and

apparently abandoned. She was resting upon the jagged rocks of the jetty, well under water, and was in danger of receiving further injury. The master of the tug immediately determined to save the launch and proceeded at once to take her off the rocks. About the time he began the work of saving her a party in a rowboat told him not to touch the launch, but did not inform him as to their interest in her. From what they said to the master of the tug and the way in which they acted toward him, he could well conclude that they were parties who had no connection with the boat and were simply interfering without authority. The master of the tug Lizzie Crawford took up the anchors of the launch and proceeded to pull her off the jetty for the purpose of towing her to a place of safety. In order to tow her without sinking, he found it necessary to make fast to her bits with a very short hawser to enable him to hold her up out of water. In this manner he towed her to the mud flats near by, where he attempted to stop the leaks, pump her out, and put her in condition to tow her to Camden.

The owners of the launch object to salvage, or the payment of any expense to which the tug was put, for the reasons, first, that the tug was notified not to move the launch, as the owners had arranged for her protection; and, further, that the tug had pulled the launch off the jetty and so negligently towed her to the mud flats, where she was further injured by the mud leaking in through the holes in her bottom; and, further, that the tug negligently twisted and sprained the launch in pulling her over the mud in such a way as to make her almost worthless. For these reasons it is claimed a recovery should not be permitted, but, upon the other hand, the owners of the tug should pay a large amount of damages for the negligent manner in which they attempted to save the launch.

A libel was filed by the White Seal for this damage thus alleged to have been caused to her, and the case was argued at the same time as the one at bar.

We, however, find that the master of the tug Lizzie Crawford was not informed as to the character of the men in the rowboat at the time the tug pulled the White Seal off the jetty, nor had he any information as to their authority over the launch. He did no more than his duty in proceeding to save her from destruction, and we are not convinced that he could have done anything better than to tow her to a place, with soft bottom, upon which she could rest until he could stop the leaks which she received upon the rocks. The master of the tug, however, discovered that the holes in the bottom of the vessel were under the engine and he was unable to get at them. He found it necessary to secure the service of another tug to tow the launch to Camden, where she was docked by her owners and repaired. The work of saving her was not at all dangerous, although it required continuous labor for about eight days. Because of the location of the injury to the launch, it was necessary to employ the tug Sewell to do some pumping, and to aid the libelant in towing the launch to Camden. It was necessary to tow the launch between the tugs Sewell and Crawford, in order that she might be kept afloat.

It is claimed that the libelant should be allowed an amount suffi-

cient to compensate the Sewell for the aid it gave in saving the launch, which amount is fixed at $160. The tug Sewell was engaged 24 hours, 10 hours of which time she was using her pumps and siphon. Her charges are $50 for 12 hours' work and extra for pumps and siphon; but we conclude in this case the Sewell is fairly compensated with an award of $100.

The value of the launch is about $6,500, and the libelant claims that he should be allowed one-half of her value; but we do not think this is a case where such a large amount should be allowed, and we are of the opinion that under the circumstances an allowance of $750 is ample compensation for the work done by the tug Lizzie Crawford in saving the launch. In addition, the sum of $100 is allowed the libelant to compensate the tug Sewell for the assistance rendered, and a judgment is entered in favor of the libelant, the tug Lizzie Crawford, and against the yacht White Seal, for the sum of $850, together with costs of suit.